UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARRY LAWTON MATTHEWS,

        Plaintiff,

v.                                          CASE No. 8:13-CV-1469-T-33TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.
_____

## REPORT AND RECOMMENDATION

        The plaintiff in this case seeks judicial review of the denial of his

claim for supplemental security income payments.[1]  The plaintiff has shown

that the Appeals Council erred when, following the submission of new and

material evidence, it denied further review.  Accordingly, I recommend that

the decision of the Commissioner of Social Security be reversed and the

matter remanded for further consideration.

                                        I.

        The plaintiff, who was twenty-two years old at the time of the

most recent administrative hearing and who has a fifth grade education, has

_____

        [1]This matter comes before the undersigned pursuant to the Standing Order of this
court dated January 5, 1998.  See also Local Rule 6.01(c)(21).

no prior work activity (Tr. 81, 99). He filed a claim for supplemental security income, alleging that he became disabled due to "Leg Calve Perthis Disease," bipolar disorder, suicidal and homicidal tendencies, severe anger disorder, hip problems, and vision problems (Tr. 272). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of obesity, Perthes disease of the hips, and major depression, which limited the plaintiff to a restricted range of light work (Tr. 61, 65). Based on the testimony of a vocational expert, the law judge found that the plaintiff could perform jobs that exist in significant numbers in the national economy (Tr.68). Therefore, the law judge ruled that the plaintiff was not disabled (id.).

The plaintiff sought review from the Appeals Council. The Appeals Council remanded the case for the law judge to, among other things, conduct another hearing, give further consideration to the plaintiff's residual functional capacity, and, if necessary, obtain evidence from a medical expert to clarify the nature, severity, and functional limitations of the claimant's

impairments (Tr. 42-44).  Accordingly, the case was remanded to the same law judge.  The law judge held another hearing (see Tr. 80) and issued a new decision (Tr. 22-33).

The law judge found upon remand that the plaintiff had severe impairments of "Legg-Calve Perthes disease of the hips; morbid obesity; disorders of the spine; schizophrenia; bipolar disorder; major depressive disorder (MDD); anxiety and posttraumatic stress disorder (PTSD)" (Tr. 24). He concluded that, with these impairments, the plaintiff has the residual functional capacity (Tr. 27):

> to perform light work as defined in 20 CFR 416.967(b), except that the claimant is limited [to] standing and/or walking 2-4 hours per 8-hour workday.  In addition, the claimant is limited to only occasional balancing, climbing, stooping, kneeling, crouching and crawling; and no climbing of ladders, scaffolds, ropes or at unprotected heights.  There are moderate limitations in social functioning, for which the claimant should not be involved in high social demands, such as frequent interaction with the public, at least no more than superficial if at all, and the same with interacting with crowds of people or having any supervisory responsibility.   The claimant has moderate limitations in concentration and persistence, for which the claimant would be limited to understanding, remembering and carrying out no

> more than simple, routine and repetitive
> instructions and procedures. The claimant would
> be able to adjust to simple changes and to make
> simple basic decisions, but not involving detailed
> tasks or detailed instructions.

The law judge also determined that the plaintiff had no past relevant work (Tr. 31). However, based upon the testimony of a vocational expert, the law judge found that the plaintiff could perform jobs that exist in significant numbers in the national economy, such as small products assembler, mail room sorter, and inspector of surgical instruments (Tr. 32). The law judge therefore ruled that the plaintiff was not disabled (Tr. 33).

The plaintiff again sought review from the Appeals Council, and submitted additional evidence in support of that request. The Appeals Council stated that it considered the additional evidence, which consisted of an orthopedic evaluation and treatment records from the Physician's Group dated July 22, 2011, through November 4, 2011, but concluded that the information did not provide a basis for changing the law judge's decision (Tr. 2, 4). Accordingly, the decision of the law judge is the final decision of the Commissioner (Tr. 1).

II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary

conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert.

denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the

courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by

substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir.

1963).

Therefore, in determining whether the Commissioner's decision

is supported by substantial evidence, the court is not to reweigh the evidence,

but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not

disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. Lamb v.

Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the Commissioner's decision on several grounds (Doc. 13). One of them has merit. Thus, the plaintiff persuasively argues that the Appeals Council erroneously denied his request for review which was based on the treatment notes of the Physician's Group, LLC, dated July 22, 2011, through November 4, 2011, and an orthopedic evaluation by Dr. Chet J. Janecki that were first submitted at that level of review (Doc. 13, pp. 18-22). The Appeals Council stated that it considered the new evidence, but "found that this information does not provide a basis for changing the Administrative Law Judge's decision" (Tr. 1-2, 5).

On May 23, 2011, the plaintiff was a passenger in a car that sustained a rear-end impact from a vehicle that was traveling 45 miles per hour (see Tr. 557). Following the automobile accident, the plaintiff began treatment with the Physician's Group for neck, back, shoulder and wrist pain (see id.; Exs. 20F, 22F). The record before the law judge contained treatment notes from the plaintiff's initial three weeks of treatment (see Ex. 20F) and an evaluation by Dr. Frank B. Gomes (Tr. 557-59).

The new evidence reflects the plaintiff's continued treatment with the Physician's Group from July 22, 2011, to November 4, 2011 (Tr. 560-614).    Additionally, the new evidence included a comprehensive orthopedic evaluation of the plaintiff's right wrist and follow-up by orthopedic physician Dr. Janecki (Tr. 602-04).    The plaintiff argues, in particular, that this new evidence supports his contention that he has a severe right wrist impairment that affects his right hand dexterity (Doc. 13, pp. 21, 22).

The regulations provide that the Appeals Council will review a case if, among other things, "[t]he action, findings or conclusions of the administrative law judge are not supported by substantial evidence." 20 C.F.R. 416.1470(a)(3).    The regulations provide further (20 C.F.R. 416.1470(b)):

> In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.... It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Judicial review of the Appeals Council's denial of review after the submission of new evidence is governed by Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253 (11th Cir. 2007). The Eleventh Circuit sought to clarify in Ingram the law concerning the nature and extent of judicial review of new evidence that was first presented to the Appeals Council. In my view, Ingram held that, when the Appeals Council considers new evidence and denies review, the district court should determine whether the Appeals Council has correctly decided that the law judge's findings are not contrary to the weight of all the evidence. See Tucker v. Astrue, 2008 WL 2811170 (M.D. Fla. 2008). This assessment is undertaken to determine whether there has been a violation of 20 C.F.R. 416.1470(b), which directs which cases the Appeals Council will review.

Accordingly, the additional evidence in this case will be considered to determine whether, in violation of 20 C.F.R. 416.1470(b), the Appeals Council erred in concluding that the law judge's findings were not contrary to the weight of the evidence currently of record. Before this determination is undertaken, the threshold inquiry is whether the additional

evidence is new and material. Unless both of these are shown, §416.1470(b) does not come into play.

Evidence is considered new if it is not cumulative. <u>Falge</u> v. <u>Apfel</u>, 150 F.3d 1320, 1323 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 525 U.S. 1124 (1999). Evidence is material if there is a reasonable possibility that the new evidence would change the administrative result. <u>Id</u>.; <u>Robinson</u> v. <u>Astrue</u>, 365 Fed. Appx. 993, 996 (11th Cir. 2010).

The evidence presented to the Appeals Council is clearly new and non-cumulative. The Commissioner argues that the evidence is not new because the law judge was already aware that the plaintiff allegedly sustained a wrist injury in an automobile accident (Doc. 15, p. 9). However, the additional records show continued functional deficiencies and abnormalities in the plaintiff's right wrist; include new diagnoses of Kienbock's disease, post traumatic synovitis, and bone bruise of the distal radius of the right wrist; and document the failure of conservative treatments which led Dr. Janecki to opine the plaintiff was a candidate for wrist surgery (Tr. 604). Therefore, the new evidence is not cumulative of the evidence before the law judge.

Accordingly, the Commissioner's argument that the evidence is not new is unpersuasive.

Further, the evidence is material in that it creates a reasonable possibility of a different decision because the new evidence undermines the law judge's rationale for finding that the plaintiff's right wrist impairment was not severe.   The plaintiff testified at the most recent administrative hearing that he experiences right wrist pain which interferes with his ability to move his dominant right hand (Tr. 91, 92). The plaintiff added that he has trouble using a fork, his hand cramps and fingers tingle after holding a pen for five minutes, and he experiences numbness in his fingers that makes it difficult to pick up things (Tr. 91-93).

The law judge mentioned in the decision the plaintiff's testimony of right hand pain and numbness, and that he has difficulty lifting and grasping things (Tr. 28). Additionally, the law judge acknowledged that an August 2011 MRI of the plaintiff's right wrist showed diffuse marrow signal abnormality and ulnar margin edema at the distal radius (Tr. 25). However, the law judge did not find that the plaintiff had a severe impairment of the

right wrist (see Tr. 24) and, concomitantly, omitted manipulative limitations from the plaintiff's residual functional capacity (Tr. 27).

The law judge stated that he generally did not find the plaintiff's allegations of disabling symptoms credible "due to a routine and conservative treatment history, unremarkable physical examinations" and "little actual treatment for the ... impairments" (Tr. 28, see also Tr. 29). Additionally, the law judge stated the following regarding the plaintiff's complaints about his right hand (Tr. 29):

> There are few, if any, allegations of numbness in the hands to a medical source .... It is reasonable to assume that if the claimant were experiencing the severity that he described at the hearing, that he would seek treatment. Yet these symptoms are not mentioned in the claimant's September consultation with Dr. Gomes. The undersigned [finds] that these inconsistencies further erode the claimant's credibility and that his ... hand numbness [is] not as severe as alleged.

The new evidence, if credited, undermines the law judge's rationale for rejecting the plaintiff's allegation of a severe right wrist impairment. Thus, the new evidence shows that the plaintiff did regularly complain to his medical providers after the automobile accident of wrist pain

and sought treatment for it, and includes objective findings of a reduced range of motion, decreased grip strength, swelling, and tenderness in the right hand.

For example, on August 19, 2011, the plaintiff complained of right hand pain to Dr. Lilla Shkolnikov, who observed on examination decreased motion in the right hand upon flexion and extension with pain, decreased grip strength in the right hand, and swelling and tenderness in the right hand (Tr. 572, 574, 575).[2]  Dr. Shkolnikov ordered therapy, use of a wrist support and a referral to an orthopedic specialist "due to the finding on the MRI of the right wrist" (Tr. 580, 581).  Similarly, at the plaintiff's September 29, 2011, appointment, the plaintiff continued to complain of right wrist pain, and Dr. Shkolnikov observed in the right hand decreased grip strength, decreased motion, and tenderness (Tr. 593, 595, 596).

Furthermore, the new evidence includes a comprehensive orthopedic evaluation of the plaintiff's right wrist by Dr. Janecki, an orthopedic physician.  At that evaluation, the plaintiff complained of right

---

[2]At that appointment, plaintiff also reported to Dr. Shkolnikov that, when the automobile accident occurred , "his right arm was over the window seal and ... the right arm was pushed forward and his right wrist went into unexpected severe bending (palmar flexion)" (Tr. 581).

wrist pain, numbness and tingling in his right hand, and difficulty moving his right wrist (Tr. 602). Dr. Janecki observed limited flexion and extension of the plaintiff's right wrist, pain to direct palpitation over his lunate in the scapholunate region, and some tenderness in the volar aspect of his wrist (Tr. 603). Dr. Janecki also reviewed the MRI of the plaintiff's right wrist, after which he diagnosed the plaintiff with "post traumatic synovitis of the right wrist," "Kienbock's disease of the right wrist" and a bone bruise of the "distal radius of the right wrist" (Tr. 603, see Tr. 558).[3] He ordered a dorsal radial injection into the plaintiff's wrist to relieve the plaintiff's symptoms (Tr. 603).

The plaintiff returned to Dr. Janecki for further evaluation on October 28, 2011, at which time the plaintiff reported to Dr. Janecki that he "continues to have substantial pain symptoms in his wrist despite the injection that was given to him about a month ago" (Tr. 604). Upon examination, Dr. Janecki observed that the plaintiff had "limitation of flexion, extension,

---

[3]According to the website of the American Society of Surgery of the Hand (ASSH), www.assh.org, Kienbock's disease is a condition in which the lunate bone, a central bone in the wrist, loses its blood supply and eventually leads to the death of the bone. At the earlier stages of the disease, "[t]here is usually tenderness directly over the lunate bone, decreased motion or stiffness of the wrist, and there can be swelling." Id.

pronation, supination, and radial and ulnar deviation. He has tenderness to palpitation over the lunate and the scapholunate region." (id.). Dr. Janecki concluded that the plaintiff "meets our indications for surgery of the right wrist," and identified three possible types of surgery, each costing about $25,000, which was appropriate for the plaintiff (id.). On November 4, 2011, about a month before the administrative hearing, the plaintiff continued to complain of constant throbbing pain in his right wrist that worsened with activity, and the plaintiff's grip strength and motion in the right hand remained decreased (Tr. 606, 608, 609).

In sum, the new evidence, if credited, undermines the law judge's rationale for finding that the plaintiff's right wrist impairment was not severe.   Thus, contrary to the law judge's explanation, the plaintiff consistently complained to medical providers following his automobile accident of right hand pain and received treatment for it; there were objective findings of abnormalities on the MRI and physical examinations; and an orthopedic physician opined that the plaintiff was a candidate for surgery of the right wrist after conservative treatments failed.

Notably, the law judge considered in his credibility determination that the plaintiff did not mention wrist pain during his evaluation with Dr. Gomes (see Tr. 29). However, the new evidence includes a pain assessment completed by the plaintiff that same day in which the plaintiff reported wrist pain, numbness, weakness, and tingling in the right hand (Tr. 591).[4] Therefore, there is a reasonable possibility that the law judge's decision would change with consideration of the new evidence, if it is credited. Accordingly, the evidence is material.

Since the additional evidence meets the threshold requirement that it be new and material, it is appropriate to consider whether the Appeals Council's denial of review was erroneous. In light of the new evidence, the law judge's finding that the plaintiff did not have a severe right wrist impairment is contrary to the weight of all the evidence.

As indicated, the current record reflects that the plaintiff regularly complained to his medical providers after a May 2011 automobile

---

[4]Furthermore, a treatment note by Dr. Shkolnikov suggests that Dr. Gomes evaluated the plaintiff's spinal impairments, and the plaintiff was separately referred to Dr. Janecki for an assessment of right wrist pain (see Tr. 594). This circumstance may explain why Dr. Gomes does not refer to the plaintiff's wrist impairment in his report.

accident of right wrist pain made worse with activity, tingling in the fingers,

right hand cramping and numbness (see Tr. 494, 500, 506, 514, 519, 524,

532, 542, 602). Also his complaints were regularly accompanied by objective

findings on examination of reduced range of motion, decreased grip strength,

swelling, and tenderness in the right hand (see, e.g., Tr. 489, 495, 501, 507,

515, 520, 525, 545, 574, 575, 603, 604, 608, 609). Furthermore, MRI testing

confirmed wrist abnormalities (Tr. 558, 603) and an orthopedic physician

diagnosed the plaintiff with "post traumatic synovitis of the right wrist,"

"Kienbock's disease of the right wrist" and a bone bruise of the "distal radius

of the right wrist" (Tr. 603). Moreover, the new evidence indicates that

conservative treatment has been unsuccessful and that an orthopedic

specialist opined the plaintiff was a candidate for right wrist surgery (Tr.

604). This evidence, if credited, indicates that the plaintiff had a severe right

wrist impairment.

The Commissioner contends that the evidence is not contrary to

the weight of the evidence of record because the plaintiff did not schedule

follow-up treatment for his right wrist after receiving the surgical

recommendation (Doc. 15, pp. 9-10). However, the plaintiff was examined

by the Physician's Group the following week (Tr. 608-09). Furthermore, the reason for not scheduling the surgery (which costs $25,000 (Tr. 604)) is speculation at this point and, therefore, does not undermine the probative value of the new evidence.

The Commissioner also argues that the new evidence is not contrary to the weight of the evidence of record because some of the objective evidence "tends to contradict his complaints" (Doc. 15, p. 10). In this regard, the Commissioner cites to treatment notes from July and September 2011 showing intact sensation and normal strength in the plaintiff's hands (id.). However, as discussed above, there were numerous other objective and subjective findings of wrist abnormalities, and the responsibility to weigh the evidence is assigned to the administrative fact-finders and not this court. As Judge Posner stated in Eads v. Secretary of the Department of Health and Human Services, 983 F.2d 815, 817-18 (7th Cir. 1983), if this court were to determine the weight to be given to particular evidence, "[i]t would change our role from that of a reviewing court to that of an administrative law judge, required to sift and weigh evidence in the first instance, rather than limited as we are to reviewing evidentiary determinations made by the front-line

factfinder." Accordingly, the law judge should determine how much weight these findings are entitled to and the extent to which they affect the plaintiff's vocational functioning.

Importantly, the law judge found that the plaintiff was not disabled based on the vocational expert's testimony that a person with the plaintiff's residual functional capacity could perform jobs available in significant numbers in the economy, such as small products assembler, mail room sorter, and inspector of surgical instruments (Tr. 32). However, the vocational expert testified that all of those jobs require bimanual dexterity (Tr. 102). The expert indicated that, if a person has no effective use of his right hand to hold, grasp, pick up objects, and have fine dexterity, he could not perform the jobs the expert identified (id.) See also SSR 85-15, 1985 WL 56857 at *7 (S.S.A.) (significant limitations of handling may eliminate a large number of occupations a person could otherwise do). Therefore, a finding of a severe right wrist impairment may limit the functioning of the plaintiff's right hand and, concomitantly, undermine the evidentiary basis for finding the plaintiff not disabled.

In sum, taking the new evidence at face value, the law judge's conclusion that the plaintiff does not have a severe right wrist impairment is contrary to the weight of all the evidence. Therefore, the Appeals Council violated the regulations in denying review.

Finally, it is noted that the plaintiff has asserted three other arguments in support of a reversal (see Doc. 13, p. 1). Because this matter will be remanded and a new decision will be made which may moot those contentions, it is appropriate to pretermit those arguments.

For the foregoing reasons, I recommend that, pursuant to sentence four of 42 U.S.C. 405(g), the decision of the Commissioner of Social Security be reversed and the matter remanded to the Commissioner for further consideration.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: APRIL 17, 2014

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).